## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **RONALD M. HAWRELAK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 13-cv-3026** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before this Court are cross motions for summary judgment (d/e 41, 44), the Report and Recommendation of United States Magistrate Judge Tom Schanzle-Haskins (d/e 47), Plaintiff's Objections to the Report and Recommendation (d/e 48), Defendant's response to the objections (d/e 49), and Plaintiff's reply (d/e 50).

Upon careful review of the record and the pleadings, the Court will OVERRULE the objections, and ACCEPT and ADOPT the Report

and Recommendation as the ORDER and OPINION of the Court, subject to modifications of the Statement of Facts to be noted.

## I. LEGAL STANDARD

The Court's standard of review for a magistrate judge's report and recommendation depends upon whether a party files objections.  If a party does not object to the report and recommendation, the Court need not conduct a review by any standard.  *See Lardie v. Birkett*, 221 F.Supp.2d 806, 807 (E.D.Mich.2002).  If a party does object to portions of the report and recommendation, pursuant to Federal Rule of Civil Procedure 72(b)(3), this Court determines "*de novo* any part of the magistrate judge's disposition that has been properly objected to."  Although this Court does not need to conduct a new hearing on the entire matter, the Court must give "fresh consideration to those issues to which specific objections have been made."  12 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure  § 3070.2 (2d ed. 1997); *Wasserman v. Purdue Univ. ex rel. Jischke*, 431 F.Supp.2d 911, 914 (N.D. Ind. 2006).

This Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed.R.Civ.P. 72(b)(3).

Here, the Plaintiff made objections to the report and recommendation, so the Court will review those aspects of the report *de novo*.

In the Court's *de novo* review of the ALJ's decision, adopted by the Appeals Council, the standard of review for the ALJ's findings adopted by the Appeals Council, is substantial evidence. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate'" to support the decision. *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The standard of review for procedural errors is harmless error, or whether the error is such that the Court believes it may change the ultimate decision of the ALJ or Appeals Council.  *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ([A]dministrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.")

## II. BACKGROUND

The Court adopts the factual findings made by the Magistrate Judge, subject to those facts which have been revised in the below summary:

Plaintiff Ronald M. Hawrelak (Hawrelak) was born in Canada on June 21, 1940.  From 1966 to 1976, he worked in Canada for Avco Financial Services (Avco).  Canadian law requires both employees and their employers to make equal contributions to the Canadian Pension Plan based on the employee's earnings.  In 1976, Hawrelak moved to the United States.  He worked in the United States from 1976 until his retirement in 2005.  Hawrelak became a United States citizen in 1993.

On October 4, 2005, Hawrelak applied for Social Security Retirement benefits.  He also applied for retirement benefits from Canada.  On November 9, 2005, the Canada Pension Plan informed Hawrelak that his application was approved and he was eligible for a monthly pension of $278.93 (Canadian), beginning December 2005.  On December 9, 2005, The Social Security Administration (SSA) awarded Hawrelak $1625.00 per month in benefits to begin in December 2005.

On February 26, 2006, Hawrelak notified the SSA that he was approved for retirement benefits from Canada, and asked for confirmation that his Social Security benefits would not be reduced. Hawrelak received no direct response to this letter; however on June 19, 2007, the SSA issued him a Notice of Change in Benefits. This notice explained that the Windfall Provision applied to Hawrelak's benefits offering because he is "entitled to a pension based on work which is not covered by Social Security," no doubt referring to the Canadian Pension Plan.  R. 106.  The SSA reduced Hawrelak's monthly benefits to $1483.40 and informed him that he had been overpaid $2400.00.[1]

Hawrelak challenged the applicability of the Windfall Provision to his Canadian pension, arguing that it was not a pension subject to 42 U.S.C. § 415(a)(7)(A), but rather a secondary retirement plan based only on employee contributions, excepted by POMS RS 00605.364(A)(1).  Hawrelak claims that Avco did not make contributions to this plan, relying on the November 9, 2005 notice from the Canada Pension Plan, which stated that his benefits were

---

[1] Because SSA later waived collection of the overpayment, the Court will not address the matter in this opinion.

calculated on the record of "your contributions and earnings contained in the Canada Pension Plan." He concluded from this language that only he and not Avco contributed to the plan. Additionally, he relied on a document entitled "Your Canada Pension Plan Statement of Contributions." This statement charted his personal contributions to the plan each year, as well as his pensionable earnings. The statement does not include any contributions from Avco or any other employer, but in a footnote states:

> You and your employer each paid contributions of 4.95% on your earnings between the minimum of $3,500 and the maximum of $46,300 for 2009. These are called "pensionable earnings." Self-employed individuals paid contributions of 9.9% on these amounts.

An Administrative Law Judge (ALJ) held a hearing on Hawrelak's case on March 10, 2009, and issued an opinion on March 24, 2009. The ALJ held that the Windfall Provision applied, and the benefits calculations were correct. Hawrelak requested that the ALJ decision be reviewed by the Appeals Council, but the Appeals Council denied his request.

Hawrelak initially brought this action to seek judicial review of the Appeals Council's denial; however, this Court remanded the

matter to the Commission because the Commission had lost the tape recording of the administrative hearing.  The Court ordered a *de novo* hearing under 42 U.S.C. § 405(g).  A second hearing was held before the ALJ on April 15, 2014.  The ALJ issued a Recommended Decision on May 5, 2014.  The ALJ again held that the Windfall Provision applied and the benefits calculations were correct.  Additionally, the ALJ addressed the individual questions and contentions listed in a summary of the case that Hawrelak provided in advance of the April 15th hearing.

On May 9, 2014, the Appeals Council issued an Unfavorable Decision referring to the same hearing in the name of Doris Hawrelak, Hawrelak's wife.  Doris Hawrelak also challenged a benefits reduction based on Hawrelak's earnings, but she is not a party to this case.  On August 20, 2014, the Appeals Council issued an order vacating the Unfavorable Decision in the name of Doris Hawrelak, and issued its own decision, adopting the Recommended Decision of the ALJ issued to Ronald Hawrelak.[2]

---

[2] In the Report and Recommendation, the Statement of Facts states that the Appeals Council vacated the ALJ decision and entered its own decision which adopted the facts and findings of the ALJ.  The Appeals Council actually took two separate actions as noted here: (1) vacating the decision issued to Doris

Hawrelak had submitted a number of exceptions to the Recommended Decision to the Appeals Council, and the Council addressed all of these exceptions.   In regard to the exceptions submitted by Hawrelak, alleging that the ALJ "abused her power and was lawless, unfair, incompetent and bias," the Appeals Council "determined that there was no abuse of discretion." R. 8. The Appeals Council ultimately decided that the Windfall provision was correctly applied and that the calculations of Hawrelak's benefits were accurate.  R. 9.

On September 11, 2014, the Commissioner moved for the Court to lift the stay on this case (d/e 36) and the motion was granted.  After the Commissioner answered Hawrelak's complaint (d/e 39), both parties moved for Summary Judgment (d/e 41,44). On May 7, 2015, United States Magistrate Judge Tom Schanzle-Haskins issued a Report and Recommendation finding that the Appeals Council's decision is supported by substantial evidence and that any procedural errors in the process were harmless (d/e 47).

### III. ANALYSIS

---

Hawrelak; and (2) issuing a decision, adopting the Recommended Decision of the ALJ issued to Ronald Hawrelak.

In Hawrelak's Response to the Magistrate Judge's Report and Recommendation, he raises 37 objections to Judge Schanzle-Haskin's recommendation (d/e 48).  These 37 objections can best be broken down into seven categories of review for this Court. Hawrelak makes three substantive objections to the Magistrate Judge's Report and Recommendation:  (1) the report includes factual errors in its Statement of Facts; (2) the ALJ's decision adopted by the Appeals Council is not supported by substantial evidence; and (3) the Magistrate Judge improperly substituted his own judgment within his review of the Appeals Council's decision. Hawrelak also objects to the Magistrate Judge's finding that the procedural errors in the process were harmless, citing four errors: (1) the April 15, 2015 hearing was not a proper *de novo* hearing; (2) Hawrelak was unable to properly make exceptions to the ALJ's decision before the Appeals Council's review; (3) the review procedure afforded Hawrelak, as a whole, is inadequate; and (4) the ALJ abused her discretion during the April 15, 2014 hearing.

### A. Any Factual Errors Made in the Report and Recommendation are Harmless.

Hawrelak raises several objections to the Statement of Facts in the Report and Recommendation.  The Court finds that none of these objections affect the legal findings of the Magistrate Judge, and therefore are harmless error.[3]  In his first and twenty-fourth objections, Hawrelak notes that the Magistrate Judge stated, "On August 20, 2014, the Appeals Council vacated the ALJ's decision and entered its own decision."  The actions of the Appeals Council were twofold.  First, the Appeal's Council acted upon the Unfavorable Decision sent to Doris Hawrelak, Hawrelak's wife, which was issued in error by the ALJ.  *See* R. 16.  The Appeals Council vacated this errant decision.  R. 10.  Second, the Appeals Council acted on the ALJ's properly issued Recommended Decision. *See*  R. 17.  The Appeals Council entered its own decision, adopting the findings and conclusions of the Recommended Decision, which constitutes the final decision of the Commissioner.  R. 8-9. However, this lack of clarity regarding the Appeals Council's actions does not change the Magistrate Judge's correct understanding that the Unfavorable Decision issued by the Appeals Council, which

---

[3] Proper modifications of these facts have been included in the Background of this opinion.  *See* Part II.

adopted the facts and findings of the ALJ's Recommended Decision, was the final decision of the Commissioner. As such, any error is harmless.

In his third objection, Hawrelak notes that the Notice of Change in Benefits does not refer specifically to the Canada Pension Plan, but rather "a pension based on work which is not covered by Social Security." R. 106-109. Hawrelak is correct about the wording of the notice; however, it is clear from these proceedings that the notice is referring to Hawrelak's pension from the Canada Pension Plan. Nevertheless, the Magistrate Judge's findings did not rely on his understanding of the Notice of Change, but rather on the footnote from the Statement of Contributions submitted by Hawrelak—which reads, "You and your employer each paid contributions"— and his analysis of Canadian law. Therefore, any error here is also harmless.

Finally, in Hawrelak's seventeenth and twenty-third objections, he notes that the Report and Recommendation cites to the Unfavorable Decision issued to Doris Hawrelak, which was vacated by the Appeals Council, rather than the Recommended Decision issued to Ronald Hawrelak, which was adopted by the Appeals

Council, when putting forth its Statement of Facts.  *See* (d/e 47).

Hawrelak is correct in his statement; however the two decisions are

identical.  *See* R. 53-72, 75-94.  Therefore, any error is again

harmless.

### B. The ALJ's Decision, Adopted by the Appeals Council, is Supported by Substantial Evidence.

In Hawrelak's seventh, thirteenth, twenty-first, twenty-fifth,

twenty-sixth, twenty-seventh, thirty-second, thirty-fourth, and

thirty-sixth objections, he argues that the Magistrate Judge erred in

his finding that the decision of the ALJ, adopted by the Appeals

Council, is supported by substantial evidence.   Because this

Court's review of Hawrelak's objections is *de novo*, this Court

reviews the decision.  *See, e.g., Welsh v. Halter*, 170 F. Supp. 2d

807, 816 (N.D. Ill. 2001).  Substantial evidence is "'such relevant

evidence as a reasonable mind might accept as adequate'" to

support the decision.  *Richardson v. Perales,* 402 U.S. 389, 401

(1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)).

This Court must accept the ALJ's findings if they are

supported by substantial evidence and may not reweigh the

evidence or substitute the Court's own judgment for that of the ALJ
or Appeals Council.  *See Delgado v. Bowen*, 782 F.2d 79, 82 (7th
Cir. 1986).  The ALJ and Appeals Council must articulate at least
minimal analysis of all relevant evidence.  See *Herron v. Shalala*, 19
F.3d 329, 333 (7th Cir. 1994).

### i.  The ALJ's Finding That the Windfall Exception Applies to Hawrelak's Case is Supported by Substantial Evidence.

Hawrelak's retirement benefits are subject to the Windfall
Provision.  The Windfall Provision applies if: (1) the claimant
becomes eligible for Social Security old-age benefits after 1985; and
(2) for the same months after 1985 that the claimant is eligible for
these old-age benefits, he is also entitled to "a monthly pension(s)
for which [he] first became eligible after 1985 based in whole or in
part on [his] earnings in employment which was not covered under
social security."  20 C.F.R. § 404.213.

Hawrelak does not contest that he first became eligible for
both his old-age Social Security benefits and his Canadian Pension
Plan benefits in December 2005.  Further, Hawrelak does not
contest that his Canada Pension Plan is based on his "earnings in
employment which was not covered under social security."

Nonetheless, Hawrelak argues that the Windfall Provision does not apply, because the money he receives from the Canada Pension Plan is not a "pension" that falls under the regulation.

Hawrelak argues that his benefits from the Canada Pension Plan are not a pension under the SSA Program Operation Manual System (POMS) RS 00605.364. POMS RS 00605.364(A)(1)(A) states that if "employer and employee contributions are used to determine the payment," it will generally be subject to the Windfall Provision. Hawrelak argues, however, that his benefits come only from his own contributions and not those of his former employer, Avco. If Hawrelak is correct, then POMS RS 00605.364(A)(1)(B)[4] applies, which states, "[i]f only employee contributions are involved…[the pension] is subject to [the Windfall Provision] only if it is the primary retirement plan." As Hawrelak receives monthly benefits of only $278.93 from the Canada Pension Plan, and receives monthly benefits of $1483.40 from Social Security, it is clear that Social Security is Hawrelak's primary retirement plan. Therefore, the only

---

[4] In Hawrelak's twenty-eighth and thirty-third objections, he takes issue with the Magistrate Judge's characterization of his argument as falling under POMS RS 00605.364(A)(1) rather than (A)(1)(B). The Court overrules Hawrelak's objection to this characterization, as (A)(1)(B) is a sub-provision of POMS 00605.364(A)(1) and so is contemplated within the Magistrate Judge's description of Hawrelak's argument.

question is whether Hawrelak's benefits from the Canada Pension Plan are based on "employer and employee" contributions or "only employee contributions."

Hawrelak relies on three pieces of documentary evidence to support his claim that the monthly benefits come from only his contributions.  The first document is a November 9, 2005 Notice of Entitlement, which states: "The monthly amount was calculated on the record of your contributions and earnings contained in the Canada Pension Plan…."  R. 116.  The second document is a Statement of Contributions from Canada Pension Plan dated February 3, 2011, which has columns listing the year, Hawrelak's contribution to the plan, and Hawrelak's pensionable earnings.  R. 456-7.  The document also contains a footnote which reads: "You and your employer each paid contributions of 4.95% on your earnings…for 2009."  R. 456.  The final document is a May 27, 2014 letter from Service Canada, which states: "the contributions provided on your statement of contributions are your personal contributions to the Canada Pension Plan and does not include contributions from any employers."  R. 32.

The documents Hawrelak cites do not satisfy his burden of proof in this case.  To merit reversal and remand, Hawrelak must show that substantial evidence does not exist to support the conclusion that Avco contributed to his Canadian pension.  The only one of these three documents that addresses whether or not an employer contribution is included in the Canada Pension Plan is the Statement of Contributions.  The footnote in that document clearly states that both employees and employers make contributions to the plan, and the exception is self-employed individuals.  The rest of the statement does not suggest anything to the contrary, as the column that Hawrelak refers to shows "Your Contribution" not "*Total* Contribution."  The Notice of Entitlement does not state that only employee contributions are made to the plan, but rather addresses how the monthly payment is calculated.  As noted in the Statement of Contributions, the contributions of employees and employers are equal, so the calculation of the monthly payment can be made from the employee's contribution alone just as easily as it can be made from the combined contribution.

Further, the May 2014 letter does not clarify who makes contributions to the plan.  The letter merely clarifies that the "Your

Contribution" column on the Statement of Contributions refers only
to Hawrelak's Contribution.  The Court would not expect the "Your
Contribution" column to refer to anything other than Hawrelak's
individual contribution, as the May 2014 letter states, because,
again, it is titled "Your Contribution" and not *Total* Contribution or
even "Contributions".  In this context, the fact that the documents
do not explicitly state that Avco made contributions to the plan is
not persuasive evidence that no such contributions were made. [5]

Further, Canadian law provides that Avco was required to
contribute to the plan.  Under the Canada Pension Plan, both
employers and employees are required to contribute based on
earnings from pensionable employment.  Revised Statutes of

---

[5] Hawrelak additionally makes an extensive mathematical argument in his
objections (d/e 48 at 25-27).  However, Hawrelak's argument is based on the
dollar amount noted in the "Your Contribution" column of the Statement of
Contributions.  Hawrelak argues that by finding that Avco contributed to the
Canada Pension Plan, the Magistrate Judge and Appeals Council must be
finding that the dollar amounts noted on the Statement of Contributions—
Hawrelak uses the first amount, $79.20—represent both Hawrelak and Avco's
contribution.  He further argues that the $79.20 could not represent the
contribution of both Hawrelak and Avco, because it would mean that each of
their individual contributions fell below the 1.6% required by Canada Pension
Plan.  However, neither the Magistrate Judge nor the Appeal's Council found
that the values in the "Your Contribution" column of the Statement of
Contributions represented both Hawrelak and Avco's contributions.  Instead,
both the Magistrate Judge and the Appeals Council found that although the
Statement of Contributions shows *only* Hawrelak's contributions, Avco also
made contributions, which are not included on the statement.  Therefore,
Hawrelak's mathematical argument is not dispositive.

Canada (R.S.C.) c. C-9 §§ 8-9.  Hawrelak's Notice of Entitlement states that Hawrelak's eligibility for benefits was based, in part, on his pensionable employment.  R. 392.  Hawrelak argues that his employment in Canada was not "pensionable employment," but rather "excepted employment."  (d/e 46) at 3.  He argues that his Canadian employment falls under R.S.C., 1985, c. C-8, § 6(2)(h), one of the twelve categories of excepted employment.  Exception (h) states that the following category of employment is not pensionable employment: "employment in Canada by an employer who employs persons in Canada but under the terms of a reciprocal agreement between the Government of Canada and the government of another country is exempt from liability to make the contribution imposed on an employer by this Act."  Hawrelak claims that this exception applies; however if his claim were true, there would exist a reciprocal agreement of the type noted in the exception.  Hawrelak provides no evidence of a reciprocal agreement that existed between Canada and the United States.

Further, if Hawrelak's employment were excepted employment, Hawrelak would not have been required to make contributions, either.  Canadian law states that employees contributed to the

Canada Pension Plan based on "pensionable employment."  R.S.C.,
1985, c. C-8 § 8.  Therefore, if Hawrelak's employment were
excepted employment, no contributions would have been deducted
from his earnings.  R.S.C., 1985, c. C-8 § 8(1) ("Every employee who
is employed by an employer in pensionable employment shall, by
deduction…from the remuneration in respect of the pensionable
employment paid to the employee by the employer, make an
employee's contribution for the year in which the remuneration is
paid to the employee.").   However, the Statement of Contributions
shows that contributions were deducted based on Hawrelak's
"pensionable earnings."  R. 456.  Obviously, these pensionable
earnings came from Hawrelak's pensionable employment.

The weight of the above evidence supports the ALJ's decision,
adopted by the Appeals Council, that Hawrelak's monthly benefits
from the Canada Pension Plan fall under the Windfall Provision.
Therefore, a "reasonable mind" would surely accept the decision as
adequate.  In this case, even if the Court desired to, it could not
substitute its own judgment, contrary to that of the Appeals
Council, after finding substantial evidence that the Windfall
Provision applies to Hawrelak's situation.

Page 19 of 33

### ii.     The Calculation of Hawrelak's Benefits is Supported by Substantial Evidence.

Hawrelak further argues that the calculation of the adjustment to his benefits based on the Windfall Provision is incorrect.  Hawrelak agrees with the calculation of his benefits if the Windfall Provision does not apply, but he argues that, if it does apply, the Commissioner calculated the adjustment improperly.

The calculations are carefully detailed in the Commissioner's Memorandum in Support of Motion for Summary Judgment (d/e 45 at 7-13).  The point of contention between Hawrelak and the Commissioner is when the subtraction based on Hawerelak's Canadian benefits (the subtraction) should be applied.  The Commissioner made the subtraction from the original amount determined when benefits were first approved, before cost of living increases were calculated.  Hawrelak argues that the subtraction should be made each year after the benefit amount is adjusted for cost of living.  POMS RS 00605.370 states that the calculations should be done in the following order:  "…b. Subtract one-half of the applicable monthly pension amount payable in the first month of concurrent entitlement from the raw [Primary Insurance Amount

(PIA)].  c. Increase the resulting PIA by applicable [Cost of Life Adjustments] up to the month of concurrent entitlement."  The Commissioner properly followed POMS when calculating Hawrelak's benefits.  Therefore, the Appeals Council's decision is based on substantial evidence.

### C. The Magistrate Judge Did Not Substitute His Judgment for That of the Commissioner.

In Hawrelak's fourth and twenty-second objections, he argues that the Magistrate Judge improperly substituted his judgment when evaluating the Commissioner's final decision.  "This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment."  *Delgado v. Bowen*, 782 F.25 79, 82 (7th Cir. 1986).  This objection again appears to be the result of a misunderstanding of legal terminology.  Under *Delgado v. Bowen*, if the Court finds that the lower court's judgment is supported by substantial evidence, the Court must affirm that judgment.  The Court is not permitted to make its own independent decision based on the entirety of the record, but rather must only evaluate whether the decision of the Appeals Council is based on substantial evidence.  Here, the Magistrate Judge found that "the

Appeals Council's decision is supported by substantial evidence,"
and so properly recommended that this Court affirm the decision of
the Appeals Council, rather than substitute the Court's own
judgment.

### D. Any Procedural Errors During the Review of Hawrelak's Social Security Benefits Were Harmless.

Hawrelak also objects to the Magistrate Judge's finding that
any procedural errors in the review of Hawrelak's Social Security
benefits were harmless.  *See Spiva v. Astrue*, 628 F.3d 346,353 (7th
Cir. 2010) (The doctrine of harmless error is indeed applicable to
judicial review of administrative decisions.); *see also*, *McKinzey v.
Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)
([A]dministrative error may be harmless: we will not remand a case
to the ALJ for further specification where we are convinced that
the ALJ will reach the same result.").  Hawrelak cites four categories
of perceived procedural error in the review process: (1) the April 15,
2015 hearing was not a proper *de novo* hearing; (2) Hawrelak was
unable to properly make exceptions to the ALJ's decision before the
Appeals Council's review; (3) the review procedure afforded
Hawrelak, as a whole, was inadequate; and (4) the ALJ abused her

discretion during the April 15, 2014 hearing.  The Court reviews
these objections *de novo*, using the doctrine of harmless error.  The
Court finds that any errors in the procedure were harmless.

### i.    Hawrelak was Given a *De Novo* Hearing by the ALJ as Ordered by This Court.

In Hawrelak's second, fifth, eighth, ninth, eleventh, sixteenth,
eighteenth, twenty-fourth, twenty-ninth, and thirty-first objections,
Hawrelak argues that he was not given a proper *de novo* hearing by
the ALJ, as this Court had ordered on November 26, 2013 (d/e) 19.
Hawrelak claims the hearing he received was not a *de novo* hearing,
because the ALJ did not premise her decision on "evidence adduced
at the hearing" and because he did not get to "discuss his case"
(d/e 48).  As the Appeals Council noted in its Unfavorable Decision,
Hawrelak misunderstands the meaning of a *de novo* hearing.  R. 9.
The Appeals Council stated that a *de novo* hearing "provides the
claimant with an opportunity to present testimony about his case
and to present any additional evidence he may wish to have added
to the record."  R. 9.

This Court agrees with the Appeals Council's description of a
*de novo* hearing.  A *de novo* review does not eliminate the record

that has been established within previous reviews, but rather requires a fresh evaluation of that evidence, as well as an opportunity to submit new evidence for evaluation.   *See U.S. v. Shola*, 124 F.3d 803, 822 (7th Cir. 1997) (Wood, J., concurring) ("The very meaning of '*de novo*' review is that the [reviewing] court approaches its task from a clean slate, basing its ruling on the record that has been developed, but drawing its own conclusion."). The claimant is not promised anything that he was not promised at the initial hearing.

Hawrelak repeatedly cites Hallex, a guidebook for the Social Security Administration, as the authority by which the ALJ's procedure should be evaluated; however the proper authority is Chapter III of the Code of Federal Regulations.  Chapter III provides the following guidance on what claimants can expect at a hearing before the ALJ:

> You may submit new evidence, examine the evidence used in making the determination or decision under review, and present and question witnesses. The administrative law judge who conducts the hearing may ask you questions. He or she will issue a decision based on the preponderance of the evidence in the hearing record.  20 C.F.R. §404.929.

The record shows that Hawrelak was given an opportunity to engage in all the procedure promised by Chapter III.  *See* R. 493 ("ALJ: Are there any records we're missing?  CLMNT: No."), R. 494 (ALJ: "now is your opportunity...to say anything you think is relevant.").

Hawrelak objects because he believed there would be back and forth discussion during the hearing.  *See* R. 496 ("CLMT: Well, also, the way I'm reading some of the, of the purpose of this meeting is to have some sort of exchange so that I get some understanding.") However, as noted by the ALJ, that is not the purpose of the hearing.  The regulations provide that the ALJ "may ask [the claimant] questions," but the word "may" shows that it is not mandatory, and further, the potential questions of the ALJ are intended to clarify the record.  20 C.F. R. §404.929.  In this case, the ALJ asked Hawrelak no questions at the hearing.  However, that is not surprising considering both that the ALJ had already presided over an initial hearing on the same facts and that Hawrelak submitted an extensive summary of his case in anticipation of the hearing.  *See* R. 502. ("ALJ: ....You submitted that brief...and actually discussed each one of your exhibits that

you attached…").   Further, Hawrelak was given the opportunity to supplement his exhibits.  R. 494-507.  Therefore, there was no procedural error, as Hawrelak was granted a proper *de novo* hearing.

### ii.   **Hawrelak was Properly Given the Opportunity to Submit Exceptions to the ALJ's Decision.**

In Hawrelak's sixth objection, he argues that he was not given the opportunity to submit exceptions to the ALJ decision because of confusion with the Unfavorable Decision issued to Doris Hawerlak and the Recommended Decision issued to Hawrelak, and because Hawrelak claims the Recommended Decision was not mailed until July 1, 2014.  Hawrelak argues that because of this confusion, his exceptions were in response to the Unfavorable Decision issued to Doris Hawrelak and he was not able to properly respond to the Recommended Decision.  However, as the Court noted in Part III. A. of this opinion, the Unfavorable Decision and the Recommended Decision are identical, except for the title and addressee.  *See* R. 53-72, 75-94.

Further, Hawrelak was given the appropriate amount of time to respond to the Recommended Decision.  The letter accompanying

the Recommended Decision issued to Hawrelak states that he must file his "briefs or written statements within 20 days of the date" that the Recommended Decision was mailed.  R. 74.  The Appeals Council did not issue its decision until August 20, 2014, 50 days from the date Hawrelak claims the decision was mailed.  Therefore, Hawrelak was given an opportunity to respond to the facts and findings of the ALJ's Recommended Decision.  In fact, Hawrelak sent a number of written statements to the Appeals Council dated both before and after the Recommended Decision was mailed.  *See* R. 13-49.   The Appeals Council responded to all of Hawrelak's exceptions in its decision.  As a result, any error had no impact on the Council's decision and was therefore harmless.

### iii.   The Procedure Used in Evaluating Hawrelak's Claim was Proper.

In Hawrelak's seventh and thirtieth objections, he argues that the procedure for appealing the initial determination of the SSA does not properly protect his rights.  The SSA granted Hawrelak reconsideration of his benefits decision and found that the decision was proper.  Then, when Hawrelak appealed, the SSA granted him a *de novo* hearing of the Commissioner's decision before an ALJ.  The

ALJ issued an Unfavorable Decision finding that the Windfall Provision applied to Hawrelak's Canadian benefits.  Hawrelak was initially denied review by the Appeals Council.  He then appealed that decision in this Court.  The Court, after discovering that the recording of his first hearing was lost, granted him a second *de novo* hearing before an ALJ.  The ALJ Recommended a Decision that the Windfall Provision was properly applied.  The ALJ's subsequent decision was then reviewed and adopted by the Appeals Council and has now been reviewed by this Court.  Hawrelak was given all the procedural protection the system affords him.

Hawrelak objects to the fact that there is "no opportunity for personal discussion with an authoritative client advocate" within the process.  (d/e 48) at 34.  Hawrelak had the ability to retain an attorney for any of the proceedings.  Hawrelak made a Motion to Appoint Counsel in this case.  (d/e 5).  This Court denied his motion, stating that "civil litigants have no constitutional right or statutory right to be represented by counsel in federal court. *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir., 1995). The decision to appoint counsel lies within the broad discretion of the

Court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir., 1992)." February 26, 2013 Text Order.

The Court stands by its decision that this case does not need the appointment of counsel. Hawrelak has adequately presented his case at every level. Further, he has not made the Court aware of any effort to retain counsel of his own accord. Although Hawrelak has taken exception to the lack of opportunity to argue back and forth with adjudicators, the process of appeal afforded to Hawrelak provided him with an opportunity to object to the adjudicators' decisions. Hawrelak has taken advantage of these opportunities for appeal. Therefore, there was no procedural error.

### iv.   The ALJ Did Not Abuse Her Discretion.

In Hawrelak's twelfth, fourteenth, nineteenth, twentieth and thirty-fifth objections, he argues that the review procedure was flawed, because the ALJ abused her discretion during the April 15, 2014 hearing. Hawrelak supports his contention with several arguments: (1) the ALJ did not take a more active role because Hawrelak was *pro se*; (2) the ALJ used Attorney Jeremy Reppy to assist in research and writing; (3) Jeremy Reppy did not properly conduct his research and did not contact Hawrelak; (4) the ALJ did

not give Hawrelak a *de novo* hearing; and (5) the ALJ did not

mention the February 26, 2006 letter in her opinion.  The Court

finds no error in the actions of the ALJ.

Hawrelak cites language from the Third Circuit advising that

an ALJ "owes a duty to a *pro se* claimant to help him or her to

develop the administrative record."  *Reefer v. Barnhart*, 326 F.3d

376, 380 (3d. 2003).  The Seventh Circuit agrees with Hawrelak's

premise that the ALJ has a "heightened" responsibility to develop

the records when a plaintiff is *pro se*.  *Luna v. Shalala*, 22 F.3d.

687, 692 (7th Cir. 1994) ("[T]he ALJ has a heightened duty to make

sure that the record is developed when a claimant is

unrepresented.")   However, both circuits agree that the Court does

not mandate a specific procedure that the ALJ must follow, but

simply ensures that the record is "adequately developed."  *Nelms v.

Astrue*, 553 F.3d 1093, 1099 (7th Cir. 2009) (remanding a case

based on the standard that the ALJ must ensure the record is

"adequately developed"); *see also Luna*, 22 F.3d at 692 ("[A]

significant omission is usually required before this court will find

that the [adjudicator] failed to assist *pro se* claimants in developing

the record fully and fairly"); *Reefer*, 326 F.3d at 380 ("we do not

prescribe any particular procedures that an ALJ must follow")
(citing *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council,
Inc.*, 435 U.S. 519, 524-25 (1978)).  Hawrelak has adequately
represented himself throughout these continued proceedings.  The
ALJ noted throughout the April 15, 2014 hearing how well-
developed the record was and how thorough Hawrelak was in his
presentation of the evidence.  R. 493-509.  The Court agrees that
the record was adequately developed, therefore the ALJ was not
required to give Hawrelak further assistance in presenting his case.

 The ALJ did not act improperly by using an attorney to assist
her with research and writing.  This occurs daily in tribunals
throughout the United States, from the law clerks of this Court to
attorneys like Jeremy Reppy.  Hawrelak further contends that he
should have been able to question Mr. Reppy at the hearing and
that Mr. Reppy should have contacted him after the hearing as a
part of Mr. Reppy's research and writing.  Neither of these
contentions is supported by the law.  As to Hawrelak's argument
that the ALJ abused her discretion by not properly awarding him a
*de novo* hearing, this matter was previously addressed in Part III. D.
i. of this opinion.  Finally, the ALJ was not required to mention

Hawrelak's February 26, 2006 letter to the Commissioner, which sought assurance that his award would not change subject to his Canadian benefits. The ALJ's responsibility was to rule on Hawrelak's claim regarding the Windfall Provision. This responsibility did not entail discussion of the letter in question. As the cited actions of the ALJ at the April 14, 2014 were all reasonable actions, the ALJ did not abuse her discretion, therefore the Court finds no procedural error.

## IV. CONCLUSION

After reviewing the Report and Recommendation, Plaintiff's objections, and the record, this Court will accept and adopt the Magistrate Judge's Report and Recommendation (d/e 47), subject to the modifications of the Statement of Facts noted above.

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (d/e 48) are OVERRULED.

IT IS FURTHER ORDERED that the Report and Recommendation (d/e 47) is ACCCEPTED AND ADOPTED as the Opinion and Order of the Court, subject to the modifications of the Statement of Facts noted above.

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Affirmance (d/e 44) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (d/e 41) is DENIED.

IT IS SO ORDERED.  This case is CLOSED.

ENTER: September 30, 2015

FOR THE COURT:

                    s/Sue E. Myerscough
                 SUE E. MYERSCOUGH
         UNITED STATES DISTRICT JUDGE